**Louis K. RISKEN, Appellant,**

v.

**Abe D. CLAYMAN and Joseph Hyman, Trustees of the Betty Clayman Trust, Appellees.**

**No. 85–541.**

Supreme Court of Iowa.

Jan. 14, 1987.

Gerald B. Feuerhelm, Des Moines, for appellant.

Paul A. Zoss and Lori L. Koop of Adams, Howe & Zoss, P.C., Des Moines, and James G. Prescott, Iowa City, for appellees.

Considered by McGIVERIN, P.J., and LARSON, SCHULTZ, CARTER and NEUMAN, JJ.

McGIVERIN, Justice.

The ultimate question in this declaratory judgment action is who, as between a contract vendor and an assignee of the vendee, is entitled to the insurance proceeds from a fire loss that preceded forfeiture of the real estate contract. On this record, we conclude the latter should prevail.

Plaintiff Louis Risken, assignee of the vendee, appealed from a district court ruling that the issue in the present action had been decided in a prior case, barring this action under the doctrine of res judicata, and ordering Risken to tender the insurance proceeds to defendants Abe Clayman and Joseph Hyman, trustees of the Betty Clayman Trust, the vendor. The court of appeals reversed the trial court and directed the trustees to tender the insurance proceeds to Risken. The trustees petitioned us for further review of the court of appeals decision, claiming the issue is barred by res judicata and the trust is entitled to the proceeds of the fire insurance policy. On review of the issues raised, we affirm the decision of the court of appeals and reverse the district court.

In 1980, the Betty Clayman Trust sold a parcel of property on an installment real estate contract to Bill and Virginia Couch. The contract contained the following provision on insurance:

5. INSURANCE. Sellers agree to carry existing insurance until date of possession and Buyers agree to accept the insurance recovery instead of replacing or repairing buildings or improvements. Thereafter until final settlement, Buyers agree to keep the improvements upon said premises insured against loss by fire, tornado and extended coverage for a sum not less than $32,500 or the balance owing under this contract, whichever is less, with insurance payable to Sellers and Buyers as their interests may appear, and to deliver policies therefor to Sellers.

Couches assigned their interest in the contract to Risken in December 1981. The assignment was recorded and Risken obtained fire insurance coverage on the property in January 1983.

The property was sold to Couches for $37,500. At the time Risken's interest in the property was recorded, Couches had made a $5,000 down payment and were

current on the monthly installment payments of $335.

On March 7, 1983, the buildings on the realty were damaged by fire. On April 29, U.S. Fire Insurance Company, Risken's insurer, issued a check for the loss in the amount of $18,980.43, payable to Risken and the trustees. Risken, who failed to make the installment payments from January to May of 1983 or to pay the real estate taxes, proposed to use the insurance proceeds to cure the delinquent installment payments, pay the taxes, and retain the remainder. The trustees proposed to use the insurance proceeds to repair the building.

On May 13, the trustees served Risken with notice of forfeiture of the contract. *See* Iowa Code §§ 656.2–.3 (1983). At that time delinquent taxes on the property totalled $8,131.33 and delinquent payments on the contract totalled $1,675.

On June 6, Risken commenced an action to enjoin the forfeiture and to seek court-ordered application of the insurance proceeds on the contract delinquencies. On June 13, the trustees completed the forfeiture proceedings by filing the notice of forfeiture and affidavit in support thereof with the county recorder. *See* Iowa Code § 656.5. After trial, the district court ruled on January 20, 1984, there was a substantial default on the contract and allowed the forfeiture to stand. No appeal was taken from that order.

On October 12, 1984, Risken filed the present action, a petition for declaratory judgment, raising the question of who was entitled to the insurance proceeds. In this action, the parties stipulated to several facts, including the following:

....

6. That following the fire, the property's value was $40,000 without repair of the structure.

....

10. On January 20, 1984, the District Court ... declined to apply the insurance proceeds towards the delinquent contract obligations.

....

12. The Court, in [the prior action], concluded that the insurance proceeds could not be used to pay [the trustees] the delinquency on the contract with the balance paid to [Risken] for the reason that such a disposition of the insurance proceeds would not be in accord with the insurance provision (paragraph 5) of the contract of the parties.

13. That [the prior action] made no specific disposition of the insurance proceeds.

The district court, acting on plaintiff's motion for separate adjudication of law points, Iowa Rule of Civil Procedure 105, and the stipulated facts, ruled that the January 1984 order in the prior action was res judicata as to the present case and ordered Risken to tender the insurance proceeds to the trustees.

Risken appealed that order to this court, contending he was entitled to the insurance proceeds. We transferred the case to the court of appeals. Iowa R.App.P. 401. The court of appeals, concluding Risken's action was not barred by the doctrines of issue and claim preclusion and determining Risken was entitled to the insurance proceeds, reversed the trial court and directed the trustees to tender the insurance proceeds to Risken.

Upon application of the trustees, we granted further review of the court of appeals decision. *See* Iowa R.App.P. 402. The trustees contend that the court of appeals erred: (1) in determining Risken's claim was not barred by res judicata; and (2) in awarding the insurance proceeds to Risken.

■ I. *Issue and Claim Preclusion.* The trustees claim that the issue of who should receive the insurance proceeds was an inherent part of the district court ruling in the earlier action; therefore, the court of appeals erred in allowing Risken to relitigate the issue and in awarding the insurance proceeds to him. The court of appeals concluded, following Risken's argument, that the only issue presented in the first action was whether the insurance proceeds

could be used to satisfy contract delinquencies and avoid the forfeiture.

For purposes of clarity, we have substituted the terms "issue preclusion" and "claim preclusion" in place of the general term "res judicata." *Israel v. Farmers Mutual Insurance Association*, 339 N.W.2d 143, 146 (Iowa 1983).

■ Claim preclusion occurs when an action has been brought, an adjudication made and the claimant is foreclosed from any further litigation on the claim. *Id.* For reasons stated in more detail later, a final adjudication as to who was to receive the insurance proceeds did not occur in the first case. Therefore, we affirm the court of appeals conclusion that Risken's present action is not barred by the doctrine of claim preclusion.

We next will address whether the court of appeals erred in determining the doctrine of issue preclusion would not operate on this record. The court of appeals aptly stated the doctrine:

Issue preclusion prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous action. *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981). Four prerequisites are required before the doctrine of issue preclusion can properly be applied in any given case:

(1) the issue concluded must be identical;

(2) the issue must have been raised and litigated in the prior action;

(3) the issue must have been material and relevant to the disposition of the prior action; and

(4) the determination of the issue in the prior action must have been necessary and essential to the resulting judgment.

For applications of these four prerequisites, see *Bascom v. Jos. Schlitz Brewing Co.*, 395 N.W.2d 879 (Iowa 1986); *Kraft v. El View Construction, Inc.*, 394 N.W.2d 365 (Iowa 1986); *Israel*, 339 N.W.2d 143; and *Hunter*, 300 N.W.2d 121.

The first prerequisite requires that the issue be identical in this case as compared with the prior action. The ruling disposing of the prior action for an injunction against the forfeiture stated:

*The* [trustees] *have asked for no affirmative relief as to the insurance proceeds.* As to the insurance proceeds, the only issue raised by the pleadings is whether or not [Risken] should be afforded the relief he asks; namely, that the proceeds be used to pay [the trustees] the delinquency on the contract with the balance paid to [Risken]. The Court concludes that this should not be granted for the reason that such a disposition of the proceeds would not be in accord with the insurance provision of the contract of the parties.

(Emphasis added.) Thus, after concluding the vendor was entitled to the forfeiture of the contract, the court determined that the insurance proceeds could not be applied to preclude a forfeiture because that application would not comply with the contract provision that the insurance money be payable to the seller and buyer "as their interests may appear."

Risken in his petition for declaratory judgment in the present action framed the issue by stating, "In its ruling the Court [in the prior action] specifically made no ruling disposing of the insurance proceeds.... [T]here now remains the question of who is entitled to the insurance proceeds."

The trustees contend the issue of ownership of the insurance proceeds raised in Risken's petition for declaratory judgment was the same issue raised in the injunction action. Particularly, the trustees rely on language in the injunction court's ruling stating the trustees are beneficiaries of the fire insurance policy taken out by Risken; thus, they should receive the proceeds.

We agree, however, with the analysis of the court of appeals that stated:

Upon an examination of the entire record, we determine despite the reference in the decree to the [trustees] being

beneficiaries of the insurance contract, the issue in the first cause of action was whether the insurance proceeds could be applied to the balances owing to avoid forfeiture while the issue in the instant case is which party is entitled to the insurance proceeds after the contract had been forfeited. [The court] expressly stated in [its] decree that the only issue to be decided was whether the insurance proceeds could be applied to balances owing.

, As mentioned before, the district court stated in the prior action that the trustees did not ask for affirmative relief as to the insurance proceeds; thus, that court did not decide who was entitled to such proceeds.

The first element of the criteria for issue preclusion has not been met. The issues in the prior case and the present case are not identical.

Therefore, we affirm the court of appeals decision allowing Risken to litigate the issue of who is entitled to the insurance proceeds at this time; accordingly, we reverse the judgment of the district court barring this action by application of the doctrine of issue preclusion.

■ II. *Entitlement to insurance proceeds.* Because the issue of who is entitled to the insurance proceeds is not barred by claim or issue preclusion, we now address the merits of Risken's claim to the proceeds as considered by the court of appeals.

The trustees claim the court of appeals erred in reversing the district court's award of the insurance proceeds to the trust. The trustees assert that the insurance proceeds stand in the stead of improvements on the property that were destroyed by the fire. If a fire had not occurred, the trustees, upon forfeiting out the real estate contract, would have received the property with the improvements intact. The trustees argue that they are now entitled to the insurance proceeds to repair the damaged improvements, thus restoring the property to the value it would have had if a forfeiture had been completed in the absence of a fire. They further claim the intent of the insurance provision of the real estate contract was to make them whole.

Risken concedes the trust had an equitable lien on the proceeds of the insurance policy so long as there was a balance owed under the real estate contract. Risken then asserts that by forfeiting out the contract the trustees extinguished Risken's liability for the purchase price and dispossessed the trust of any interest it had in the insurance proceeds.

Essentially we are being asked to determine the meaning of the real estate contract provision stating insurance will be "payable to the Sellers and Buyers as their interests may appear." The Wisconsin court has stated that "as their interests may appear" *does not refer to the interest* of the mortgagee or vendor *in the property, but to the amount due on the obligation,* the payment of which is to be secured. *Behnke v. Radtke,* 65 Wis.2d 403, 406, 222 N.W.2d 686, 687 (1974) (vendor); *Cary Manufacturing Co. v. Acme Brass & Metal Works,* 215 Wis. 585, 590, 254 N.W. 513, 514–15 (1934) (mortgagee). *See generally* J. Appleman, *Insurance Law & Practice* §§ 3401, 3405 (1970) (mortgagee).

We have previously stated along the same line that a vendor's interest in insurance proceeds is measured by the unpaid balance of the installment contract. *Farmers Savings Bank, Joice v. Gerhart,* 372 N.W.2d 238, 242 (Iowa 1985) (vendor); *Kintzel v. Wheatland Mutual Insurance Association,* 203 N.W.2d 799, 803–04 (Iowa 1973) (vendor). *Cf. Giberson v. First Federal Savings & Loan Association,* 329 N.W.2d 9, 11 (Iowa 1983) (mortgagee—nature of interest defined by mortgage); *Lozier Automobile Exchange v. Interstate Casualty Co.,* 197 Iowa 935, 941, 195 N.W. 885, 887–88 (1923) (lienholder under installment sales contract entitled to balance due on contract rather than value of car on payment for conversion loss). In *Kintzel,* we discussed the interest of a real estate contract vendor arising out of an insurance provision required by the contract covering

the parties "as their interests appear." 203 N.W.2d at 803–04. We treated the contract vendor as we have treated mortgagees, determining that the interest of the contract vendor is measured by the unpaid purchase price. *Id.* at 803, 809–10. We concluded that under the contract provision the proceeds stood as security for the purchase price. *Id.* at 809.

When a vendee, such as Risken, has defaulted in performance of the obligations of the installment real estate contract, the vendor may elect from a number of remedies:

    (1) keep good its tender of performance, demand the balance of the purchase price, and sue for specific performance;

    (2) terminate the contract because of vendee's breach, keep the land, and sue for damages for the breach;

    (3) rescind the contract *in toto;* or

    (4) enforce a forfeiture.

*Abodeely v. Cavras,* 221 N.W.2d 494, 497–98 (Iowa 1974); *First National Bank v. LeBarron,* 201 Iowa 853, 856, 208 N.W. 364, 366 (1926). In *Abodeely,* we stated that a vendor cannot pursue two inconsistent remedies, such as forfeiture and specific performance. *Id.* at 498. When the remedy of forfeiture is pursued by the vendor against the defaulting vendee, "the liability of the latter for the unpaid purchase money is extinguished." *Gray v. Bowers,* 332 N.W.2d 323, 325 (Iowa 1983).

At least one court has discussed the entitlement to insurance proceeds in a case factually analogous to this appeal where the loss occurred before the contract was forfeited. In *Geranios v. Annex Investments, Inc.,* 45 Wash.2d 233, 273 P.2d 793 (1954), Geranios purchased property on contract from Annex. Geranios was required to insure the property for Annex's benefit as its interest may appear. Geranios defaulted on the contract. The property was then damaged by an earthquake. After the insurance company paid on the loss, half of which was retained by Annex, the vendor, Annex forfeited out the real estate contract. Geranios brought an action against Annex for unjust enrichment as to the insurance proceeds held by the vendor. The court stated:

    When a vendor has given a purchaser under an executory real estate contract notice of forfeiture and the entire purchase price is not due, the purchaser has a right to acquiesce therein and treat the notice as a waiver of the vendor's right to hold the purchaser for the unpaid balance of the contract.... [T]he right of Annex to hold Geranios for the balance of the purchase price was at an end, and when that right ended there ceased to be any justification for [the vendor's] continued retention of the $5,000 [insurance proceeds], or whatever part thereof it had not expended on the improvement of the ... property with the consent of Geranios.

*Id.* at 235, 273 P.2d at 794 (citations omitted). The court's holding reflects the principle that a vendor cannot pursue the two inconsistent remedies of forfeiture and recovery of the unpaid amount of the purchase price. The court's language implied that ordinarily in that situation the vendor would have to return the fire loss proceeds to the vendee; however, under the record in that case, the action for unjust enrichment was barred by the statute of limitations.

Under the facts presented here, the trustees attempted to pursue two remedies: forfeiture and specific performance of the contract delinquencies by collection of the insurance proceeds. At the time of the fire loss, there was a contract balance of approximately $32,000. The parties stipulated in this action that following the fire the property was worth $40,000. By forfeiting the contract, the trustees reclaimed the $40,000 piece of property in satisfaction of the $32,000 debt, thereby extinguishing Risken's liability on the contract price. *See Gray,* 332 N.W.2d at 325; *Abodeely,* 221 N.W.2d at 497–98; *LeBarron,* 201 Iowa at 855–56, 208 N.W. at 366. Further, the insurance proceeds were no longer necessary as security on the debt, because, even in its damaged condition, the property value exceeded the unpaid purchase price.

The court of appeals analogized the forfeiture proceedings in this case with the foreclosure proceedings in *Farmers Savings Bank, Joice v. Gerhart.* In *Gerhart* we stated, "The great weight of authority follows the rule that denies a mortgagee the right to insurance proceeds from losses predating the foreclosure sale when the mortgagee bids the outstanding amount of the judgment." 372 N.W.2d at 243. Implicit in the court of appeals holding is the concept that forfeiture is like bidding in the judgment at a foreclosure sale. The court of appeals noted that, if the mortgagor receives the insurance proceeds following a foreclosure, the vendee must receive the proceeds after he is forfeited out, or else forfeiture, which is not favored by the courts, will be more advantageous to the creditor than foreclosure.

The court of appeals summarized its opinion by stating:

> When the [trustees] *elected* to forfeit the real estate contract they voluntarily converted the debt into property and in doing so took the property in satisfaction of the debt. [The trustees'] lien on the insurance proceeds is determined by the unpaid purchase price and [Risken's] liability for the unpaid purchase price having been extinguished by the forfeiture, [Risken] is entitled to the insurance proceeds.

(Footnote omitted; emphasis in original.)

We agree with the court of appeals reversal of the trial court on the issue of who is entitled to the insurance proceeds and affirm its direction to the trustees to endorse and tender the insurance check to Risken.

The trustees make several other contentions in which we find no merit.

III. *Disposition.* We affirm the decision of the court of appeals and reverse the judgment of the district court.

DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED.